1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT

8              EASTERN DISTRICT OF CALIFORNIA

9

10   ALEIDA T. M.,[1]

11            Petitioner,                         No. 1:26-cv-00548-TLN-JDP

12

13        v.                                      **ORDER**

14   TIMOTHY ROBBINS, et al.,

15            Respondents.

16

17         This matter is before the Court on Petitioner Aledia T.M.'s ("Petitioner") Petition for Writ

18   of Habeas Corpus (the "Petition").  (ECF No. 1.)  On January 22, 2026, the Court issued a

19   Temporary Restraining Order ("TRO") and ordered Respondents to show cause why the Court

20   should not grant the Petition.[2]  (ECF No. 7.)  Respondents filed a motion to dismiss.  (ECF No.

21   11.)  Petitioner replied.  (ECF No. 12.)  For the reasons set forth below, Respondents' motion to

22   dismiss is DENIED and the Petition is GRANTED.

23   ───────────────
     [1]     To protect sensitive personal information, the Court omits Petitioner's full name, using
24   only her first name and last initials.  *See* Memorandum Re: Privacy Concern Regarding Social
     Security and Immigration Opinions, Committee on Court Administration and Case Management,
25   Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/
     files/18-cv-l-suggestion_cacm_0.pdf.
26
     [2]     In its TRO, the Court ordered Petitioner immediately released, however, it is not clear
27   from the parties' subsequent filings whether Respondents have complied with that Order.
     Therefore, **no later than February 19, 2026**, Respondents must file a notice of compliance
28   certifying that Petitioner was released and identifying the date and conditions of release.

                                      1

1    **I.      FACTUAL AND PROCEDURAL BACKGROUND**[3]

2        Petitioner is a native and citizen of Columbia who fled her country to seek asylum in the

3    United States. (ECF No. 1 at 6.)  Petitioner entered the United States on February 23, 2023 and

4    was briefly detained by immigration authorities.  (*Id.*)  Immigration authorities determined

5    Petitioner was not a danger to the community or a flight risk and they released her on her own

6    recognizance on March 4, 2023 with a Notice to Appear for removal proceedings.  (*Id.*)

7    Thereafter, Petitioner filed an asylum application and complied with the conditions of her release,

8    including sending U.S. Immigration and Customs Enforcement ("ICE") photos of herself,

9    attending ICE appointments, and informing ICE of her whereabouts.  (*Id.*)

10        Over nearly three years, Petitioner established a life in California.  (*Id.* at 7.)  She

11   maintained a stable residence with friends, started a relationship with her now fiancé, obtained

12   authorization to work, found employment in a retail store, and took English classes.  (*Id.*)

13        Petitioner also asserts she has no criminal history anywhere in the world. (*Id.* at 2, 4.)

14        Nevertheless, on November 17, 2025, at a scheduled ICE check-in, Petitioner was

15   detained without notice or a hearing.  (*Id.*)  Petitioner was detained for over two months without

16   an opportunity to be heard.  (*See id.*)  Petitioner challenged the lawfulness of her civil detention

17   through the Petition and a Motion for TRO.[4] (ECF Nos. 1, 2.)

18        On January 22, 2026, the Court found Petitioner was likely to succeed on her claim that

19   her detention violated the Fifth Amendment Due Process Clause and ordered Petitioner's release.

20   (ECF No. 7.)  The Court now considers the Petition on the merits.

21   **II.     STANDARD OF LAW**

22        The Constitution guarantees the availability of the writ of habeas corpus "to every

23   individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

24   (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

25   _____

26   [3]     The facts in this case are not disputed.  (*See* ECF Nos. 1, 11.)

     [4]     Petitioner included a declaration in support of her motion for TRO (ECF No. 2-3), which
27   appears to reference a different and unknown individual who is not relevant in this proceeding.
     The Court did not consider the declaration in its decision on the TRO but cautions Petitioner's
28   counsel on inadvertent errors in filings.

1    custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

2    release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

3    corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

4    Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

5    served as a means of reviewing the legality of Executive detention, and it is in that context that its

6    protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a

7    district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

8    *Davis*, 533 U.S. 678, 687 (2001).

9         **III.    ANALYSIS**

10         Petitioner claims her detention violates procedural due process under the Fifth

11    Amendment Due Process Clause.  (ECF No. 1 at 11–12.)  Respondents only argument in

12    opposition is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).[5]

13    (ECF No. 11 at 1–2.)

14         The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or

15    property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d

16    976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

17    the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

18    These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

19         Courts examine procedural due process claims in two steps: the first asks whether there

20    exists a protected liberty interest under the Due Process Clause, and the second examines the

21    procedures necessary to ensure any deprivation of that protected liberty interest accords with the

22    Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

23    *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

24    the question remains what process is due.").

25

26    _____

      [5]    Alternatively, Respondents request this Court to hold it ruling in abeyance pending the
27    Ninth Circuit's ruling on *Rodriguez Vasquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025).
      (ECF No. 11 at 2.)  As this Court has stated numerous times, it will not delay issuing relief on a
28    prospective chance a pending appeal could have some bearing on a portion of the case.

1          A. Liberty Interest

2          As for the first step, the Court finds Petitioner has established a protectable liberty

3    interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

4    Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by

5    statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he

6    government's decision to release an individual from custody creates 'an implicit promise,' upon

7    which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

8    the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

9    2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a

10   noncitizen released from custody pending removal proceedings has a protected liberty interest in

11   remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL

12   2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional

13   release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

14   conditional release in the case before them with the liberty interest in parole as characterized by

15   *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.

16   Cal. Sept 9, 2025).

17         Here, Petitioner gained a liberty interest in her continued freedom when she was released

18   on her own recognizance from immigration custody in March 2023. (ECF No. 1 at 2.) Under

19   *Morrisey*, this release implied a promise that she would not be re-detained, during the pendency

20   of her immigration proceedings, if she abided by the terms of her release. Respondents do not

21   dispute that Petitioner complied with the conditions of his release. (*See generally* ECF No. 11.)

22   Indeed, Petitioner was detained as the result of her compliance with a routine ICE check-in.

23   (ECF No. 1 at 2.) Also, Petitioner's immigration case is still pending. (*See id.*) As this Court has

24   found previously, along with many other courts in this district when confronted with similar

25   circumstances, Petitioner has a clear interest in her continued freedom. *See, e.g.*, *Doe v. Becerra*,

26   787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing

27   petitioner to remain in the community for over five years strengthened petitioner's liberty

28   interest).

4

1     In opposition, Respondents argue that Petitioner has no liberty interest because she is an

2  "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No.

3  11.)  Section § 1225(b)(2) mandates detention during removal proceedings for "applicants for

4  admission" who are "seeking admission" and does not provide for a bond hearing.  Conversely,

5  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who

6  are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th

7  1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether

8  to release or detain the individual and it provides several layers of review for an initial custody

9  determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the

10 opportunity to be represented by counsel and to present evidence, the right to appeal, and the right

11 to seek a new hearing when circumstances materially change."  *Id.* at 1202.

12     Until the U.S. Department of Homeland Security ("DHS") changed its policy in July

13 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in

14 the United States who were detained by immigration authorities and subject to removal.

15     The vast majority of courts across this Circuit, including this one, have repeatedly rejected

16 Respondents' argument on the applicability of § 1225(b)(2).  *See Morales-Flores v. Lyons*, No.

17 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this

18 Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v.*

19 *Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (issuing

20 vacatur of unlawful DHS July Policy for a nationwide certified class).  "These courts examined

21 the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it

22 applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like

23 [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-

24 EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison,

25 "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section

26 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render

27 a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior

28 statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC),

1    2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

2         For these reasons, the Court finds Petitioner is not an applicant "seeking admission"

3    subject to mandatory detention under § 1225(b)(2).  Rather, Petitioner is instead subject to

4    § 1226(a) and is entitled to the process that statute requires.  Thus, Petitioner maintains her liberty

5    interest.

6                        B.  Procedures Required

7         As to the second step — what procedures or process is due — the Court considers three

8    factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

9    erroneous deprivation of such interest through the procedures used, and the probable value, if any,

10   of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

11   the function involved and the fiscal and administrative burdens that the additional or substitute

12   procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

13        First, Petitioner has a substantial private interest in remaining free from detention.  As

14   discussed above, Petitioner was out of custody for nearly three years, during which she built a life

15   in California.  (ECF No. 1 at 7–8.)  She established a stable residence, got engaged, obtained

16   work authorization and employment in a retail store, took English classes, and saved up funds to

17   hire counsel for her asylum case.  (*Id.*)  Petitioner was then detained for over two months without

18   notice or an opportunity to be heard, taking her freedom and her privacy, and affecting her

19   relationships, work, and education.  Therefore, Petitioner's private interest has been impacted by

20   her detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL

21   3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

22        Second, the risk of erroneous deprivation is considerable given Petitioner has not received

23   any process, either pre- or post-deprivation.  Petitioner was detained without notice or a hearing.

24   (ECF No. 1 at 8.)  She was not given a hearing either pre- or post-deprivation.  (*Id.* at 8.)  Without

25   any procedural safeguards to determine whether her detention was justifiable, the probative value

26   of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

27        Finally, the Government's interest is low, and the effort and cost required to provide

28   Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

                                        6

1    TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent

2    under a final order of removal, "[t]he government has no legitimate interest in detaining

3    individuals who have been determined not to be a danger to the community and whose

4    appearance at future immigration proceedings can be reasonably ensured by [ ] bond or

5    alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4

6    ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a

7    noncitizen presents a risk of flight or danger to the community.") (cleaned up).

8         Here, there is no final order of removal for Petitioner and Respondents do not argue that

9    Petitioner is a danger or a flight risk.  (*See* ECF No. 11.)  Petitioner's immigration proceedings

10   and asylum application are currently pending.  (*See* ECF No. 1 at 7.)  Additionally, Petitioner has

11   already been determined not to be a flight risk or danger when she was released on her own

12   recognizance in 2023.  (ECF No. 1 at 2.)  Over the nearly three years since, Petitioner's conduct

13   has only strengthened that determination.  Petitioner has no criminal history.  (*Id*.)  And she has

14   complied with her conditions of supervision.  (*Id*. at 7.)  In fact, she was detained during an ICE

15   check-in, which demonstrates her compliance with immigration orders.  (*Id*.)  Thus, Respondents

16   had no legitimate interest in detaining Petitioner.

17        Moreover, the cost and time of procedural safeguards are minimal here.  Notice and

18   custody determination hearings are routine processes for Respondents.  Indeed, these are the very

19   processes owed to Petitioner under § 1226(a).  Certainly, it is less of a fiscal and administrative

20   burden for the Government to return Petitioner home to await a determination on her immigration

21   proceedings than to continue to detain her.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL

22   1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to

23   the public of immigration detention are staggering.").

24        The Court finds that, under these circumstances, Respondents were required to provide

25   notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the

26   Constitution requires some kind of a hearing *before* the State deprives a person of liberty or

27   property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court

28   describes post-deprivation remedies as the "special case" where those are "the only remedies the

7

1   State could be expected to provide." *Id.* at 129.  Here — where there is no final order of removal

2   for Petitioner, she is not a danger or flight risk, and has no criminal history — the Court finds pre-

3   deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of

4   liberty.  Further, Respondents have not provided any substantive opposition to the contrary.

5   (*See* ECF No. 11.)

6          Respondents did not provide either notice or a pre-deprivation hearing.  Nor did

7   Respondents provide a post-deprivation hearing.  Therefore, Respondents violated the Fifth

8   Amendment and Petitioner's procedural due process rights.

9          **IV.   CONCLUSION**

10          Accordingly, the Court GRANTS the Petition.[6]  IT IS HEREBY ORDERED:

11   1.  Respondents' Motion to Dismiss (ECF No. 11) is DENIED.

12   2.  By **February 19, 2026**, Respondents must file a notice of compliance with the TRO (ECF

13       No. 7) certifying that Petitioner was released and identifying the date and conditions of

14       release.

15   3.  Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

16   4.  To avoid further irreparable harm and protect the public interest, Respondents are

17       ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent

18       compliance with constitutional protections, including seven-days' notice and a pre-

19       deprivation hearing before a neutral fact-finder where: (a) Respondents show material

20       changed circumstances demonstrate a significant likelihood of Petitioner's removal in the

21       reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing

22       evidence that Petitioner poses a danger to the community or a flight risk.  At any such

23       hearing, Petitioner shall be allowed to have counsel present.

24   //

25   //

26

27   [6]    Petitioner also requested an order for attorney's fees and costs under the Equal Access to
     Justice Act.  (ECF No. 1 at 11.)  The Court will consider any timely filed request for fees and
28   costs on a properly noticed and supported motion.

1    5.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

2        IT IS SO ORDERED.

3  Date: February 18, 2026

4  _____

5        TROY L. NUNLEY
       CHIEF UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28